**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Esther Wilder, | Civ. Action No. 1:22-cv-01254-PKC |
| Plaintiff, | |
| v. | |
| Sarah Hoiland, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................................... 2

        A.      The Parties .......................................................................................................... 2

        B.      The Copyrighted Work ....................................................................................... 2

        C.      Plaintiff Recruits Defendant To Be Part of the NICE Project .............................. 3

        D.      Defendant Copies Plaintiff's Copyrighted Text .................................................. 6

        E.      Procedural History .............................................................................................. 9

III.    LEGAL STANDARD ..................................................................................................... 9

IV.     ARGUMENT ................................................................................................................ 10

        A.      Defendant Is Liable for Copyright Infringement ................................................. 10

                1.      Plaintiff is the Owner of a Valid Copyright in an Original Work of
                        Authorship................................................................................................ 11

                2.      Defendant Infringed Plaintiff's Copyrighted Work ................................... 12

        B.      Defendant's Affirmative Defenses Are Meritless................................................. 12

                1.      Plaintiff Owns a Valid Copyright in the Copyrighted Work ................... 13

                2.      Defendant Did Not Have an "Implied License" to Use Plaintiff's
                        Copyrighted Work in the CCCLA Presentation, Without Attribution or
                        Authorization ........................................................................................... 13

                3.      Defendant's Infringement of Plaintiff's Copyrighted Work Is Not
                        Excusable Under the "Fair Use" Doctrine ................................................. 17

V.      CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Sagan*,
   50 F.4th 309 (2d Cir. 2022) ...................................................................15

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...............................................................................10

*Arista Recs., LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010).....................................................................11

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017).....................................................15

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)..........................................................................18, 19

*Cronin v. Aetna Life Ins. Co.*,
   46 F.3d 196 (2d Cir. 1995).......................................................................10

*Design Options, Inc. v. BellePointe, Inc.*,
   940 F. Supp. 86 (S.D.N.Y. 1996) ............................................................15

*Dickerson v. Napolitano*,
   604 F.3d 732 (2d Cir. 2010).....................................................................10

*Gallo v. Prudential Residential Servs., Ltd. P'ship.*,
   22 F.3d 1219 (2d Cir. 1994).....................................................................10

*Gaste v. Kaiserman*,
   863 F.2d 1061 (2d Cir. 1988)...................................................................12

*Golden v. Michael Grecco Prods., Inc.*,
   524 F. Supp. 3d 52 (E.D.N.Y. 2021) ............................................14, 18, 19

*Goodman v. Universal Beauty Prod., Inc.*,
   No. 17-cv-1716 (KBF),
   2018 WL 1274855 (S.D.N.Y. Mar. 9, 2018) .....................................15, 16

*Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*,
   28 F. Supp. 3d 399 (E.D. Pa. 2014) ........................................................16

*Hamil America, Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999).......................................................................12

ii

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985)..........................................................................................19

*Hirsch v. Complex Media, Inc.*,
    No. 18 Civ. 5488 (CM),
    2018 WL 6985227 (S.D.N.Y. Dec. 10, 2018) .......................................................19

*Hunley v. BuzzFeed, Inc.*,
    No. 1:20-CV-08844-ALC,
    2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021).......................................................18

*Jorgenson v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003)...................................................................................12

*Lipton v. Nature Co.*,
    71 F.3d 464 (2d Cir. 1995)...................................................................................12

*LPD New York LLC v. Adidas America Inc.*,
    No. 15-CV-6360 (MKB),
    2022 WL 4450999 (E.D.N.Y. Sept. 24, 2022) .....................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)............................................................................................10

*Nicklen v. Sinclair Broad. Grp., Inc.*,
    551 F. Supp. 3d 188 (S.D.N.Y. 2021)..................................................................17

*Psihoyos v. Pearson Educ., Inc.*,
    855 F. Supp. 2d 103 (S.D.N.Y. 2012)..................................................................14

*Roe v. City of Waterbury*,
    542 F.3d 31 (2d Cir. 2008)...................................................................................10

*Shepard v. Wo Hop City, Inc.*,
    No. 18-CV-9634 (JPO),
    2021 WL 4267527 (S.D.N.Y. Sept. 20, 2021).......................................................11

*Tasini v. New York Times Co.*,
    206 F.3d 161 (2d Cir. 2000).................................................................................14

*Viacom Int'l Inc. v. Fanzine Int'l. Inc.*,
    No. 98 CIV. 7448(KMW),
    2000 WL 1854903 (S.D.N.Y. July 12, 2000) .......................................................16

*Von Der Au v. Michael G. Imber, Architect, PLLC*,
    No. SA-20-CV-00360-XR,
    2021 WL 1131719 (W.D. Tex. Mar. 24, 2021) ...................................................19

*Wright v. Goord*,
    554 F.3d 255 (2d Cir. 2009)..................................................................................................10

**Statutes and Rules**

17 U.S.C. § 102(a) ...............................................................................................................11

17 U.S.C. § 410(c) ...............................................................................................................13

17 U.S.C. § 501 .....................................................................................................................12

Copyright Act of 1976, 17 U.S.C. § 101, et seq. ...................................................................2, 18

Fed. R. Civ. P. 56..................................................................................................................1, 9

Local Rule 56.1 ........................................................................................................................2

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Esther Wilder ("Plaintiff") respectfully moves for summary judgment with respect to her claim against Defendant Sarah Hoiland ("Defendant") for copyright infringement.

## I.    INTRODUCTION

The material facts in this action for copyright infringement are simple, and the evidence supporting the elements of copyright infringement is undisputed. Plaintiff is the sole author and owner of the copyrighted work at issue, instructional material on the assessment of methods of teaching quantitative reasoning ("QR"). Defendant does not dispute that Plaintiff authored this work. Nor does Defendant dispute that she copied substantial parts of the copyrighted material and inserted it (including a typo) into a PowerPoint she presented to attendees at a national conference. Nor does she dispute that she did so without obtaining Plaintiff's permission to copy and distribute it, and without attributing the copyrighted material to Plaintiff.

Thus, Defendant admits the facts establishing her infringement. In response to the proof of her infringement, Defendant poses three affirmative defenses: lack of ownership of a valid copyright; implied license; and fair use. None of the three affirmative defenses defeat her liability for copyright infringement.

While Defendant contends that Plaintiff does not have a valid copyright because similar ideas and structures have been a part of academic scholarship, the work that Plaintiff created easily meets the standard of copyrightability. Further, Defendant copied a large part of the copyrighted work verbatim, typo and all, not simply the ideas or the titles that she claims are not original to Plaintiff.

As to the second affirmative defense, Defendant cannot establish a necessary element of an implied license defense – a meeting of the minds between Plaintiff and Defendant on the infringing use. It is clear that Plaintiff would never have consented to Defendant's wholesale

copying of Plaintiff's work, one segment of an instructional program taken out of context, and without the attribution that is an academic norm.

Finally, Defendant's fair use defense fails because the fair use factors favor Plaintiff. Defendant's wholesale copying of Plaintiff's work with virtually no change or additional input from Defendant was not a transformative fair use. Rather, Defendant, in apparent bad faith, copied verbatim (even copying the typo in the original) and presented Plaintiff's copyrighted text (as well as other material authored by Plaintiff and another colleague) at a national conference as it were Defendant's own creation, thus enhancing Defendant's resume while impairing Plaintiff's ability to publish and present about her own work.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Plaintiff is a tenured Sociology professor at Lehman College of the City University of New York ("CUNY") (Plaintiff's Local Rule 56.1 Statement of Material Facts, "SOF," ¶ 1; Declaration of Esther Wilder, "Wilder Decl.," ¶ 2.) At the time of the events at issue, Defendant was an assistant professor of Sociology at Hostos Community College at CUNY. (SOF ¶ 19; Ex. 20,[1] Hoiland Tr. 19:12–20:16, 25:10–13; Wilder Decl. ¶ 33.) This action for copyright infringement arises out of Defendant's verbatim copying of Plaintiff's original text, created by Plaintiff as part of a National Science Foundation ("NSF") funded project, in violation of the Copyright Act of 1976, 17 U.S.C. § 101, et seq. (ECF No. 1, "Compl.," ¶ 1.)

### B.    The Copyrighted Work

From 2011 to 2016, Plaintiff served as the Principal Investigator ("PI") on the NSF funded project, Numeracy Infusion Course for Higher Education, abbreviated NICHE. (*Id.* ¶ 8; *see also*

---

[1] Exhibits 16–20 are attached to the Declaration of Janet B. Linn submitted herewith ("Linn Decl."). Exhibits 1–15 are attached to the Wilder Decl.

SOF ¶¶ 3, 5; Ex. 6 at P156–230 at P181; Wilder Decl. ¶ 12.) NICHE was an instructional program for CUNY faculty. (Compl. ¶ 8; *see also* SOF ¶ 6; Wilder Decl. ¶¶ 13–14.) In 2013, Plaintiff authored the copyrighted text at issue in this action, Unit 7H, entitled "QR Assessment Plan/Instrument" (the "Copyrighted Work") (Compl. ¶¶ 8–9; *see also* SOF ¶¶ 9, 13, 14; Wilder Decl. ¶¶ 17, 20; Ex. 1, Ex. 2, P677.) This Copyrighted Work was one of several units of assessment instructions/guidelines that Plaintiff developed for the program. (SOF ¶¶ 7, 10; Wilder Decl. ¶¶ 15, 18; Ex. 1.) The faculty enrolled in NICHE received instruction in teaching QR with three core areas: learning goals, creating instructional material, and QR assessment. (SOF ¶ 6; Wilder Decl. ¶¶ 13–14.) Unit 7H provided instructional material relating to each of these three key tasks. (SOF ¶ 6; Wilder Decl. ¶¶ 13–14.)

A key focus of Plaintiff's academic research was QR literacy and QR instruction. (SOF ¶¶ 4, 11; Wilder Decl. ¶¶ 11, 24.) The NICHE program resulted from Plaintiff's extensive experience researching QR instruction and teaching QR literacy in her courses. (SOF ¶ 11; Wilder Decl. ¶ 24.) In developing the Copyrighted Work, Plaintiff carefully selected guidelines and strategies that she found effective in explaining assessment of QR instruction to an audience of non-specialists. (SOF ¶ 12; Wilder Decl. ¶ 25.)

Plaintiff had not met Defendant when the NICHE program was developed, nor was Defendant involved or associated with the NICHE program in any way.  (Compl. ¶ 9; *see also* SOF ¶¶ 20–21; Wilder Decl. ¶¶ 34–35.)

### C.    Plaintiff Recruits Defendant To Be Part of the NICE Project

At the end of 2016, at the invitation of NSF, Plaintiff applied for another NSF grant—the Numeracy Infusion for College Educators ("NICE") program. (SOF ¶ 24; Ex. 6, P156–230 at P163.) Like the NICHE program, the NICE program was focused on teaching faculty how to infuse QR instruction into their courses, but NICE was geared specifically toward CUNY's Hispanic-

Serving Institutions in the Bronx. (SOF ¶ 25; Ex. 6, P156–230 at P176, P185; *see also* Wilder Decl. ¶ 39.) For the NICE grant, Plaintiff was required to have an additional PI at a community college. (SOF ¶ 18; Wilder Decl. ¶ 32.) Through a colleague, Plaintiff was introduced to Defendant, then an Assistant Sociology Professor at Hostos Community College, who had an interest in QR literacy but, unlike Plaintiff, had limited credentials in the field. (SOF ¶ 19, Ex. 20, Hoiland Tr. 19:12–20:16, 25:10–13; Wilder Decl. ¶ 33.) Defendant agreed to act as a PI on NICE, and Plaintiff added Defendant as a second PI to the grant proposal. (SOF ¶ 22, Wilder Decl. ¶ 36.) Defendant lacked experience with NSF grant applications, so Plaintiff took the lead on the application process. (SOF ¶ 23; Ex. 20, Hoiland Tr. 25:10–26:2, 88:6–10; Wilder Decl. ¶ 37.)

According to the NSF NICE proposal, the NICE program was an expansion of the NICHE program, adapting it for the three Bronx-based Hispanic Serving Institutions ("HSIs"): Lehman College, Hostos Community College, and Bronx Community College. (SOF ¶¶ 17–18; Ex. 20, Hoiland Tr. 20:12–16; Wilder Decl. ¶¶ 30–32.) NICE was to provide instruction to faculty at HSIs on teaching QR to meet the unique needs of Latinos and underrepresented minorities. (SOF ¶ 28; Wilder Decl. ¶ 42.) As part of that objective, it was contemplated that the NICHE instructional material would be adapted for HSIs. (SOF ¶¶ 25–29, Ex. 6, P156–230 at P176–177, P185; *see also* Wilder Decl. ¶ 39.)

Among Defendant's responsibilities, as outlined in the proposal, was recruiting Hostos faculty for the NICE program and promoting NICE at Hostos and other CUNY schools in the Bronx. (SOF ¶¶ 33–34; Ex. 20, Hoiland Tr. 23:18–24:18; Ex. 6, P156–230 at P199, P205.) Each of the faculty enrolled in the program was to develop and incorporate instructional and assessment material into their teaching. (SOF ¶ 31; Ex. 6, P156–230 at P177.) The NICE program was to generate data from the faculty materials. (SOF ¶ 32; Ex. 6, P156–230 at P179, 181.) The results of

that research was then to be disseminated by Plaintiff and Defendant in publications and conferences and "other relevant outlets". (SOF ¶ 35; Ex. 6, P156–230 at P180–181, P199.) The NICE program was scheduled to run from January 2017 to December 2019. (SOF ¶¶ 36–37; Ex. 19; Ex. 6, P156–230 at P201, 207; Ex. 20, Hoiland Tr. 25:25–28:3.)

While a goal of the NICE program was to adapt the NICHE instructional materials for NICE and HSI faculty, the adaptation never occurred. (SOF ¶ 46; Ex. 20, Hoiland Tr. 78:25–79:18; Wilder Decl. ¶ 46, 56.) Other than changing the references from NICHE to NICE, the NICHE instructional materials were incorporated whole and unchanged into NICE. (SOF ¶¶ 30, 45; Ex. 20, Hoiland Tr. 23:6–17, 79:14–18.) Defendant did not contribute to or adapt any of the instructional materials for the NICE program. (SOF ¶ 46; Ex. 20, Hoiland Tr. 78:25–79:18; Wilder Decl. ¶ 46, 56.)

As had been the case with NICHE, only the faculty enrolled in NICE (and program administrators) had access to the NICHE instructional materials, which was available to the enrollees on Blackboard, a system used in course instruction at CUNY. (SOF ¶¶ 15–16, 44, 47; Ex. 20, Hoiland Tr. 78:19–24; Wilder Decl. ¶¶ 26–27, 57.) During the first year of NICE, Defendant was enrolled as a faculty participant in the program and Defendant was required, as were all faculty participants, to create instructional materials and assessment materials following the guidelines in the NICE units. (SOF ¶¶ 38–39, 41, 48; Hoiland Tr. 34:6–36:4, 37:13–39:6, 106:6–14; Wilder Decl. ¶¶ 54, 60–61.)

Although the materials Plaintiff developed in the NICHE program were made available to the participants in the NICE program, these materials specifically stated that they were protected by copyright and that no one was allowed to use any NICHE/NICE materials without Plaintiff's explicit permission. (SOF ¶¶ 8, 13, 40, 42; Ex. 5, P665; *see also* Wilder Decl. ¶¶ 16, 59.) Defendant

never sought or received Plaintiff's permission to use the Copyrighted Work or other NICHE/NICE materials outside of the instructional use by CUNY faculty envisioned in the NICE proposal. (SOF ¶ 43; Ex. 20, Hoiland Tr. 108:4–8.) As the NICE grant proposal made clear, to the extent that Defendant was expected to present at national conferences, she was to present the "results" of research done with respect to the project. (SOF ¶ 64; Wilder Decl. ¶ 70.) The proposal distinguished between promoting the project at CUNY schools in the Bronx and presenting the results of ***her research*** alone, or in collaboration with others at national conferences. (SOF ¶¶ 31–35, Ex. 20, Hoiland Tr. 23:18–24:18; Ex. 6, P156–230 at P180–181, 199.)

Before 2019, Plaintiff and Defendant presented together on NICE twice at national conferences: the National Numeracy Network ("NNN") annual meeting and the Mathematical Association of America Metropolitan New York section meeting. (SOF ¶ 49; Ex. 20, Hoiland Tr. 43:5–17; Wilder Decl. ¶ 65.) At these conferences, Plaintiff and Defendant presented an overview of the NICHE and NICE programs, shared research results, and highlighted plans to adapt NICHE to NICE. (SOF ¶ 50; Ex. 20, Hoiland Tr. 42:24–43:4, 44:7–46:4; Wilder Decl. ¶ 66; Ex. 16, D504–529.) At the NNN Annual Meeting, Defendant and another colleague presented instructional and assessment materials that they created as participants in NICE. (SOF ¶ 51; Ex. 20, Hoiland Tr. 44:7–48:19.) At none of the conferences were sections of the NICHE/NICE instructional and assessment materials shared with the conference attendees. (SOF, ¶ 52; Wilder Decl. ¶ 68.) The presentations at these conferences did not suggest that Defendant was entitled to expose chunks of NICHE/NICE instructional and assessment materials when presenting in national conferences. (*Id.*)

### D.  Defendant Copies Plaintiff's Copyrighted Text

Fully aware of Plaintiff's rights and without Plaintiff's permission or knowledge (SOF ¶¶ 89–92; Wilder Decl. ¶¶ 72, 75, 76–78), Defendant copied Plaintiff's Copyrighted Work and

incorporated it virtually verbatim into the PowerPoint presentation Defendant prepared for, and presented at, the national conference at Valencia College (the "CCLA Conference") (SOF ¶¶ 53, 65, 69, 73–74; Ex. 4; Ex. 17, D01–03; Ex. 20, Hoiland Tr. 79:19–24, 92:22–95:2, 210:13–211:7.), a PowerPoint presentation which the conference made available online to all conference attendees online.  (SOF ¶ 55–57, 66–67; Ex. 3; Ex. 17, D01–03 at D02; Ex. 12, P428–429 at P428; Ex. 20, Hoiland Tr. 82:12–84:12, 108:10–110:6.) While Defendant informed Plaintiff that she would be presenting at a conference at Valencia College after Defendant's presentation was approved, she never sent Plaintiff an advance copy of the abstract of the presentation nor otherwise explained the proposed content of the presentation. (SOF ¶¶ 61-63; Ex. 12, P428–429 at P428; Ex. 20, Hoiland Tr. 187:2–18, 189:18–20; Wilder Decl. ¶ 69.) Plaintiff believed that Defendant would be presenting **her own work**, as anticipated under the NICE program. (SOF ¶ 64; Wilder Decl. ¶ 70.) Defendant also misrepresented to the organizers of[2] and attendees at the conference that she was the sole author of Plaintiff's copyrighted text. (SOF ¶¶ 54, 58-60; Ex. 8, D04; Ex. 20, Hoiland Tr. 111:13–112:13, 112:17–114:6; see also Ex. 12, P428–429 at P428.)  Other than her name on the cover page of the PowerPoint, Defendant does not cite any sources for the infringing text, and there is nothing to suggest that anyone other than Defendant created or developed any part of it. (SOF ¶¶ 68, 70–72; Ex. 3, D234–256 at D234; Wilder Decl. ¶¶ 72–75; Ex. 20, Hoiland Tr. 136:3–20.)

An example of Defendant's infringing presentation as compared to Plaintiff's copyrighted text is shown below:

---

[2]  Defendant signed the intellectual property license form required by the conference organizers indicating she had whatever approval was necessary to use any copyrighted material in her presentation, and granting the Board of Trustees at Valencia College, "its designees[,] and assignees" "a non-exclusive license to use, copy and distribute" the PowerPoint Presentation, including "posting the materials online for downloading."

| Excerpts from Infringing Text |
|---|

## ASSESSING NUMERACY IN A FACULTY DEVELOPMENT PROGRAM

*Sarah L. Hoiland, Ph.D.*
*Assistant Professor of Sociology*
*City University of New York*
*Hostos Community College*

**QR Assessment Instrument**

Please restate your revised QR learning goals that you developed in this blog along with your QR assessment instrument.  We ask that your QR assessment be simple and consist of 3 questions (e.g., multiple choice questions or problems with accompanying scoring rubrics similar to the CAT) that directly correspond to the 3 learning goals you have articulated (if you are undertaking a pre-test/post-test design, you may want to develop two versions of the instrument, although we recognize that given where we are in the semester you may be unable to administer a pretest assessment at this point in time)

PLEASE KEEP YOUR ASSESSMENT INSTRUMENT SIMPLE and include only 3 questions/problems with scoring rubrics, etc.!

You assessment instrument should be designed to measure whether or not (or the extent to which) your QR lesson/assignment succeeded in teaching students the 3 learning goals you put forward.  The assessment should be designed to give feedback to you as an instructor!  Please indicate when and how you plan to administer your assessment instrument in your blog post!

| Excerpt from Copyrighted Text |
|---|

QR Assessment Instrument

Please restate your revised QR learning goals that you developed in this blog along with your QR assessment instrument. We ask that your QR assessment be simple and consist of 3 questions (or scoring rubrics) that directly correspond to the 3 learning goals you have articulated (if you are undertaking a pre-test/post-test design, you may want to develop two versions of the instrument). PLEASE KEEP YOUR ASSESSMENT INSTRUMENT SIMPLE and include only 3 questions/scoring rubrics, etc.!

You assessment instrument should be designed to measure whether or not (or the extent to which) your QR lesson/assignment succeeded in teaching students the 3 learning goals you put forward. The assessment should be designed to give feedback to you as an instructor! Please indicate when and how you plan to administer your assessment instrument.

(*Compare* Ex. 3, Slides 1 & 9, *with* Ex. 1.)

Plaintiff's copyrighted text is the subject of United States Copyright Registration No. TX 8-963-226, naming Plaintiff as the author. (Ex. 2.)

When Plaintiff discovered Defendant's unauthorized use of Plaintiff's Copyrighted Work

months later, Plaintiff immediately advised Defendant that Plaintiff did not consent to the use and

sought to have Defendant at least correct the attribution issue by adding her name as a co-presenter.

(SOF ¶¶ 88–93; Wilder Decl. ¶¶ 71, 72, 75, 76–78.)

      Based on Defendant's actions, including Plaintiff's work and that of a junior colleague

without their consent or attribution, Plaintiff sought first informal, and then formal, resolution at

CUNY.  (SOF ¶¶ 83–87, 92–99; Wilder Decl. ¶¶ 76–79, 82–84, 96–97; Ex. 7, P231–233 at P233;

Ex. 13, P480–484 at P480–481, 483; Ex. 14, P553–558 at P554; Ex. 15, P475–477 at P475–476;

Ex. 20, Hoiland Tr. 95:3–97:9, 126:7–13, 139:10–141:2, 145:21–146:6.)  When that was

unsuccessful, Plaintiff brought this action against Defendant for copyright infringement.

### E.  Procedural History

      Plaintiff filed her Complaint on February 9, 2022, seeking injunctive relief and damages

for Defendant's copyright infringement. (ECF No. 1.) On April 8, 2022, Defendant filed her

answer, asserting three affirmative defenses. (ECF No. 10.) A scheduling order was entered on

April 18, 2022. (ECF No. 13.) On February 6, 2023, Plaintiff submitted her pre-motion letter

regarding her anticipated motion for summary judgment as to Defendant's copyright infringement

(ECF No. 29) and Defendant submitted her pre-motion letter regarding her anticipated motion for

summary judgment as to her "implied license" defense. (ECF No. 28.) On February 9, 2023, the

Court set a schedule for the Parties' cross-motions for summary judgment. As discussed below,

Defendant's anticipated motion is baseless, and summary judgment should be granted as to

Defendant's liability for copyright infringement.

### III.  LEGAL STANDARD

      Summary judgment is proper "if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)); *see Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship.*, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted). However, "the judge's function [in reviewing a motion for summary judgment] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## IV.   ARGUMENT

### A.   Defendant Is Liable for Copyright Infringement

"The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his

copyrighted work." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17 U.S.C. § 106). "To establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Id.* (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). There is no serious dispute with respect to either element.

> 1. *Plaintiff is the Owner of a Valid Copyright in an Original Work of Authorship*

As to the first element, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression," including textual works, like the one at issue here. 17 U.S.C. § 102(a). "Copyright protection attaches immediately upon the work's creation . . . ." *Shepard v. Wo Hop City, Inc.*, No. 18-CV-9634 (JPO), 2021 WL 4267527, at *4 (S.D.N.Y. Sept. 20, 2021).

Here, the copyrighted text easily qualifies as "original." "To be original, a work must be 'independently created by the author (as opposed to copied from other works)' and must 'possess[] at least some minimal degree of creativity.'" *Id.* (quoting *Feist*, 499 U.S. at 345). "***This is not a high hurdle.***" *Id.* (emphasis added.) "Per the Supreme Court: '[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.'" *Id.* (quoting *Feist*, 499 U.S. at 345) (cleaned up). There is no genuine dispute about Plaintiff's authorship of the copyrighted material. Although Defendant has proffered a nominal "affirmative defense" that the copyrighted text is not original, she has not posited an alternative author and has admitted her allegation was essentially premised on lack of personal knowledge of Plaintiff's authorship. Defendant additional argument that some ideas, titles, and/or structures underlying a part of the copyrighted text were known—as is the case with all scholarly works—does not render

the copyright invalid and the work unoriginal. Indeed, Defendant admits that she copied the exact expression of a large section of the work authored by Plaintiff—typos and all. (*See, e.g.*, Compl., Ex. 4 (Defendant's Slide 9 copied typo: "You assessment instrument should . . . ").)

> 2.   *Defendant Infringed Plaintiff's Copyrighted Work*

To establish the second element of copyright infringement, the copyright owner must show that "(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil America, Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (internal citations omitted). "Because copiers are rarely caught red-handed", actual copying may be established by direct or circumstantial evidence. *Gaste v. Kaiserman,* 863 F.2d 1061, 1066 (2d Cir. 1988); *Jorgenson v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

The second element is also readily satisfied. Defendant admits that she reproduced Plaintiff's copyrighted text in her presentation either by taking a screenshot of, or by cutting and pasting the Copyrighted Text into her presentation, which she then displayed publicly at an academic conference, and which was distributed electronically to all conference attendees via a web portal.  Defendant further admits that she did not obtain Plaintiff's prior consent to copy and reproduce the Copyrighted Work in the presentation. Indeed, Plaintiff only learned of the use long after it occurred. Accordingly, Plaintiff should be granted summary judgment on the issue of liability for copyright infringement under 17 U.S.C. § 501. *See, e.g.*, *Lipton v. Nature Co.*, 71 F.3d 464, 471–72 (2d Cir. 1995) (affirming grant of summary judgment where defendant admitted to copying and merely speculated that the plaintiff had not authored the copyrighted work).

**B.      Defendant's Affirmative Defenses Are Meritless**

In an attempt to justify her admitted copying, Defendant has proffered three affirmative defenses: (i) lack of ownership of a valid copyright; (ii) implied license; and (iii) fair use. (ECF

No. 10, Answer.)  Defendant bears the burden of proof on each of her affirmative defenses. Each of these defenses fails as a matter of law because Defendant cannot meet her burden.

### 1.  *Plaintiff Owns a Valid Copyright in the Copyrighted Work*

As discussed above, the copyrighted text easily satisfies and clearly exceeds the low standard for originality under copyright law.  Plaintiff carefully crafted the text of the Copyrighted Work based on her many years of researching QR instruction and her own classes on the subject. Defendant's first affirmative defense—that "Plaintiff cannot establish that she created or is otherwise the owner of the portions of the NICE Materials at issue, or that such materials are sufficiently original to warrant copyright protection" (ECF No. 10-1 at 3)—was based only "[u]pon information and belief" in her Answer. Plaintiff's Copyright Registration is evidence of Plaintiff's ownership of a valid copyright, 17 U.S.C. Sec. 410(c), and Defendant has not offered any evidence that anyone else authored or owns the Copyrighted Work. Rather, Defendant herself admits that Plaintiff authored the Copyrighted Text that Defendant copied in the CCLA Presentation. (SOF ¶¶ 73–79; Ex. 20, Hoiland Tr. 92:22–95:2, 210:13–211:10.) While Defendant has argued that certain concepts and structures are not original, Defendant acknowledges she copied essentially verbatim the majority of the protectible original text in the Copyrighted Work, including the typo in the original.

### 2.  *Defendant Did Not Have an "Implied License" to Use Plaintiff's Copyrighted Work in the CCCLA Presentation, Without Attribution or Authorization*

Defendant's second affirmative defense—that Plaintiff granted her an "implied license"—also fails. Specifically, Defendant argues that she should not be held liable for her admitted copying because Plaintiff supposedly "granted [Defendant] an implied license to use the Text in furtherance of her duties as co-PI of the NICE Project." (ECF No. 28 at 3.)  Defendant argues that "the parties' course of conduct" establishes such implied license on three bases:

1) "The [Copyrighted] Text was available to Dr. Hoiland via the NICE Project website for use as the instructional materials for the NICE Project."

2) "[A]s a PI on the NICE Project, Dr. Hoiland was required to present at professional conferences . . . ."

3) "Dr. Hoiland invited Dr. Wilder to co-present with her" at the Valencia College event and, while Plaintiff "declined for personal reasons," she "express[ed] pleasure that Dr. Hoiland would be presenting on behalf of the NICE Project."

(*Id.*; *see also* ECF No. 10-1 at 3.)  None of these facts establish an implied license.

"Where the dispute turns on whether there is a license at all, the burden is on the alleged infringer to prove the existence of the license." *Tasini v. New York Times Co.*, 206 F.3d 161, 171 (2d Cir. 2000); *see, e.g.*, *Golden v. Michael Grecco Prods., Inc.*, 524 F. Supp. 3d 52, 64–66 (E.D.N.Y. 2021) (granting summary judgment of copyright infringement where, *inter alia*, defendant "failed to meet his burden on this defense"). Defendant cannot meet any of the tests for establishing an implied license applied by court in the Second Circuit. Further, the evidence directly contradicts an essential element required to demonstrate an implied license under any of those tests, the meeting of the minds of Plaintiff and Defendant on Defendant's particular usage.

Courts in the Second Circuit have found "'implied [copyright] licenses only in ***narrow circumstances*** where one party created a work at the other's request and handed it over, ***intending*** that the other copy and distribute it.'" *Golden*, 524 F. Supp. 3d at 64 (emphasis added) (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)). While other New York courts have based an implied copyright license on the parties' course of conduct, *see, e.g.*, *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 129 (S.D.N.Y. 2012), there is no similar course of conduct between Plaintiff and Defendant.

At their presentations at prior conferences, Plaintiff and Defendant presented an overview of the NICHE and NICE programs, and Defendant presented her work as an enrollee in NICE. (SOF ¶ 50; Ex. 20, Hoiland Tr. 42:24–43:4, 44:7–46:4; Wilder Decl. ¶ 66; Ex. 16, D504–529.)

There was no similar exposure of a section of the NICHE/NICE materials to those outside the CUNY faculty enrolled in the programs. Nor was there silent assent by Plaintiff to Defendant's conduct as in the cases relying on the course of conduct between the parties to find an implied license. As soon as Plaintiff discovered Defendant's use of her Copyrighted Work after the CCCLA conference, Plaintiff immediately objected and raised the issue with Defendant and, when she was unable to resolve the matter with Defendant, Plaintiff initiated an informal proceeding and then filed a formal complaint with the City University of New York. (SOF ¶¶ 88–99; Wilder Decl. ¶¶ 71, 72, 75, 76–79, 82–84, 96–97; Ex. 13, P480–484 at P480–481, 483; Ex. 15, P475–477 at P475–476); *see, e.g.*, *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 349–50 (S.D.N.Y. 2017) (granting summary judgment of copyright infringement and finding that no implied license existed because, *inter alia*, defendant stopped using the copyrighted work after its post-infringement negotiations with the plaintiff fell through).

Moreover, in the Second Circuit, an implied license, like any implied contract, requires a meeting of the minds between the parties. "Whatever test is applied, the question comes down to whether there was a ***meeting of the minds*** between the parties to permit the particular usage at issue." *Goodman v. Universal Beauty Prod., Inc.*, No. 17-cv-1716 (KBF), 2018 WL 1274855 at 3 (S.D.N.Y. Mar. 9, 2018) (internal citations omitted) (emphasis added); *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 320 (2d Cir. 2022) (An implied license "require[s] a 'meeting of the minds between the parties to permit the particular usage at issue'") (citations omitted). "To establish a meeting of the minds [for an implied agreement], there must be an agreement on all essential terms." *LPD New York LLC v. Adidas America Inc.*, No. 15-CV-6360 (MKB), 2022 WL 4450999, at *14 (E.D.N.Y. Sept. 24, 2022) (internal quotations and citations omitted). "[A]n implied license to use a copyrighted work ***cannot arise out of the unilateral expectations of one party***." *Design*

*Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996) (internal quotation omitted and emphasis added); *see also Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc.*, 28 F. Supp. 3d 399, 410 (E.D. Pa. 2014) ("Furthermore, the question is not merely what Defendants believed they had permission to use, but whether Plaintiff intended Defendants to use the images without limitation."); *Viacom Int'l Inc. v. Fanzine Int'l. Inc.*, No. 98 CIV. 7448(KMW), 2000 WL 1854903, at \*5 (S.D.N.Y. July 12, 2000) (A license cannot be inferred from "plaintiff's failure to limit explicitly the scope of Schoengood's use of the slides . . . this approach would place the burden on the wrong party").

No such "meeting of the minds" on the particular usage Defendant made existed between Plaintiff and Defendant here. Plaintiff clearly would not consent to the dissemination of one section of the NICHE/NICE materials out of context to attendees at a national conference who had no knowledge of the remainder of the programs.  The use made by Defendant was not the type of instructional or promotional use contemplated by Plaintiff or the NSF grant. Plaintiff would never have consented to exposing an audience, unfamiliar with the program, to one section out of context. Instead of promoting NICE, it would provide a confusing and misleading understanding of the program. Even if the attendees had been eligible to enroll in NICE, divulging a large section of the instructional material in the program, taken out of context, could impair the NICE team's ability to assess the program reliably.

Moreover, not only did Plaintiff explicitly require that anyone using her materials obtain her permission (as specifically stated on the NICHE materials), Plaintiff clearly would not have agreed to her Copyrighted Work being presented without crediting her as the source (SOF ¶¶ 119–121; Wilder Decl. ¶¶ 98–100) and, beyond that, agree that Defendant could misleadingly represent that she, not Plaintiff, was the sole author.  *See, e.g., Goodman v. Universal Beauty Prod. Inc.*,

16

2018 WL 1274855, at *5–6 (S.D.N.Y. Mar. 9, 2018) (granting summary judgment of copyright infringement and rejecting implied license defense where plaintiff gave defendant access to the subject photograph "in a digital format that enabled endless copies" where plaintiff also conveyed explicit restrictions on its use).

In fact, even absent being cautioned by the explicit prohibition against use without Plaintiff's permission, Defendant should not have expected her use of Plaintiff's Copyrighted Work, without indicating Plaintiff was the author, would be permitted by Plaintiff.  Academic norms and practice dictate that use of another's material verbatim in presentations must "explicitly identify, credit and reference the author."  (Ex. 9, ASA's Code of Ethics, P273–293 at P288–289 ("Sociologists do not present others' work as their own, whether it is published, unpublished, or electronically available."); *see also* Ex. 10, CUNY's Academic Integrity Policy, P649–654 at P649–650 ("Academic dishonesty is prohibited in The City University of New York." Examples include "Submitting someone else's work as your own."); Ex. 11, P294–298 at P297; SOF ¶¶ 107–118, Ex. 20, Hoiland Tr. 14:4–15:14, 47:24–48:9, 179:14–22, 180:2–181:8, 183:12–184:9, 184:12–185:16, 185:22–186:16, 209:17; Wilder Decl. ¶¶ 2–7, 88–89, 91, 95.)

In view of these undisputed facts, Defendants cannot meet her burden of raising a triable issue of fact as to the existence of an implied license, and this defense does not shield her from liability.

> ### 3.   *Defendant's Infringement of Plaintiff's Copyrighted Work Is Not Excusable Under the "Fair Use" Doctrine*

Defendant's third and final affirmative defense is that "Plaintiff's copyright infringement claim is barred by Dr. Hoiland's fair use of the NICE Materials at issue." (ECF No. 10-1 at 3.) Defendant bears the burden of showing that the use was fair.  *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188, 196 (S.D.N.Y. 2021). Again, in view of the undisputed facts, Defendant

cannot establish fair use as a matter of law.

"In determining whether a defendant's use is a fair one, courts weigh (1) the purpose and character of the use, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion used, and (4) the effect of the use upon the market for or value of the work in light of the purposes of the Copyright Act." *Id.* Considering these four factors, Defendant's fair use defense fails.

"The heart of the fair use inquiry is the purpose and character of the use." *Hunley v. BuzzFeed, Inc.*, No. 1:20-CV-08844-ALC, 2021 WL 4482101, at *3 (S.D.N.Y. Sept. 30, 2021). This factor focuses on whether the use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . . in other words, whether and to what extent the new work is 'transformative.'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Here, Defendant's use was not at all "transformative"; she merely copied the bulk of Plaintiff's Copyrighted Work virtually verbatim without adding text beyond a few words of summary, commentary or any new meaning. *See, e.g.*, *Hunley*, 2021 WL 4482101, at *3 ("[T]he alleged use here is not transformative because the Post fails to alter the photographs with new expression, meaning, and message."); *Golden*, 524 F. Supp. 3d at 62 (explaining that the "lift[ing of] someone else's copyrighted material because it provides an attractive image to go along with the story he is reporting" is not a transformative use).

The third factor, the amount of work used, and whether "'the quantity and value of the material used,' . . . are reasonable in relation to the purpose of the copying," also weighs against finding fair use. *Campbell*, 510 U.S. at 586 (internal citation omitted). Until Defendant's presentation, Plaintiff's Copyrighted Work was accessible only to faculty enrolled in the program. Defendant used almost the entirety of the copyrighted work, virtually verbatim, far more than was

18

reasonable. *See, e.g.*, *Golden*, 524 F. Supp. 3d at 63 ("Generally speaking, the more of a copyrighted work that is taken, the less likely the use is to be fair.") (internal quotation omitted). Indeed, Defendant herself dismissed the importance of copying the text into the PowerPoint (and thus her need to copy so much of the Copyrighted Work), explaining that she used the slides as a quick visual, that she did not intend to, and did not, discuss the text on the slides beyond a passing reference to the slides.  (SOF ¶¶ 80–81, Ex. 20, Hoiland Tr. 136:11–138:12, 193:10–194:4, 200:2– 202:10.)

Further, Defendant's presentation, and representation of the Copyrighted Work as her own, benefited her academic resume and could inhibit Plaintiff's ability to publish and present about her work, now presented to academia as Defendant's intellectual property. *Cf. Campbell*, 510 U.S. at 584 (stating that merely because a use is not for profit "does not insulate it from a finding of infringement"); *Von Der Au v. Michael G. Imber, Architect, PLLC*, No. SA-20-CV-00360-XR, 2021 WL 1131719, at *4 (W.D. Tex. Mar. 24, 2021) ("Even though the Defendant did not produce the Photograph for individual sale or profit, it surely stood to profit indirectly from the publicity gained by publication of a blog that used the Photograph."); (SOF ¶¶ 100–106; Ex. 20, Hoiland Tr. at 27; 81:9–12, 169:20–170:3,  234:18–235:24, 236:19–237:6; Ex. 18, D88–103 at D0094; Wilder Decl. ¶¶ 99, 102–105).

Finally, a fair use analysis considers "the propriety of the defendant's conduct." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Omitting Plaintiff's authorship credit and substituting her own name, Defendant's copying raises the inference of bad faith and further weighs against a finding of fair use. *Hirsch v. Complex Media, Inc.*, No. 18 Civ. 5488 (CM), 2018 WL 6985227, at *6 (S.D.N.Y. Dec. 10, 2018). In sum, Defendant's conduct has all the hallmarks of unlawful infringement, not fair use.

## V.    CONCLUSION

For the above reasons, summary judgment should be granted in favor of Plaintiff.


Dated: March 28, 2023                    By: _s/ Janet B. Linn_____
                                         Janet B. Linn
                                         Sandra A. Hudak
                                         TARTER KRINSKY & DROGIN LLP
                                         1350 Broadway
                                         New York, NY 10018
                                         Tel.:    (212) 216-8000
                                         Fax:     (212) 216-8001
                                         E-mail:  jlinn@tarterkrinsky.com
                                                  shudak@tarterkrinsky.com

                                         *Attorneys for Plaintiff Esther Wilder*