UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER WILDER,

Plaintiff,

-against-

SARAH HOILAND,

Defendant.

Case No. 1:22-cv-01254-PKC

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**DAVIS+GILBERT LLP**

Guy Cohen
1675 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendant Sarah Hoiland*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................................1
ARGUMENT ..................................................................................................................................2
I. Dr. Hoiland Possessed an Implied License to Use the Course Materials in Conference Presentations about the NICE Project ..........................................................2
II. Dr. Hoiland's Use of the Subunit 7H Materials Was a Fair Use ........................................8
CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Weber*,
2021 U.S. Dist. LEXIS 188544 (S.D.N.Y. Sept. 30, 2021)....2

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
448 F.3d 605 (2d Cir. 2006)....8

*Bourne v. Walt Disney Co.*,
68 F.3d 621 (2d Cir. 1995)....7

*Effects Assocs., Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990)....2

*Falcon Enterprises, Inc. v. Publishers Service, Inc.*,
438 Fed. Appx. 579 (9th Cir. 2011)....3

*Fontana v. Harra*,
2013 U.S. Dist. LEXIS 35067 (C.D. Cal. Mar. 12, 2013)....3

*Graham v. James*,
144 F.3d 229 (2d. Cir. 1998)....7

*Harbus v. Manhattan Inst. for Policy Research, Inc.*,
2020 U.S. Dist. LEXIS 74568 (S.D.N.Y. Apr. 27, 2020)....9

*I.A.E., Inc. v. Shaver*,
74 F.3d 768 (7th Cir.1996)....3

*Jacob Maxwell, Inc. v. Veeck*,
110 F.3d 749 (11th Cir.1997)....3

*Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*,
399 F. Supp. 3d 120 (S.D.N.Y. 2019)....2

*Latour v. Columbia Univ.*,
12 F. Supp. 3d 658 (S.D.N.Y. 2014)....3

*Lulirama Ltd. v. Axcess Broad. Servs., Inc.*,
128 F.3d 872 (5th Cir.1997)....3

*MidlevelU, Inc. v. ACI Info. Grp.*,
989 F.3d 1205 (11th Cir. 2021)....2

*Psihoyos v. Pearson Educ., Inc.*,
855 F. Supp. 2d 103 (S.D.N.Y. 2012)....................2

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*,
627 F. Supp. 2d 123 (S.D.N.Y. 2008)....................8

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
756 F.3d 73 (2d Cir. 2014)....................9

*Zappa v. Rykodisc, Inc.*,
819 F.Supp.2d 307 (S.D.N.Y. 2011)....................3

Defendant Sarah Hoiland submits this reply brief in further support of her summary judgment motion.

**PRELIMINARY STATEMENT**

Sarah Hoiland is a professor at a mostly Hispanic community college in the South Bronx. She has worked to help underprivileged students improve their ability to understand and use numbers, charts, and basic math in everyday life. Esther Wilder developed an effective online course to teach professors how to better incorporate numbers, charts, and basic math into their courses. She hoped to obtain grant money to continue her course and she asked Dr. Hoiland to be a co-director. Dr. Wilder wrote a proposal seeking grant money and they submitted it together. They requested funds to offer the course to professors at three schools in the Bronx and to travel to conferences to promote the course.

They each received a grant. Dr. Hoiland's grant included funds to facilitate the course and to travel to conferences to promote the course. Dr. Hoiland gave a presentation about the course in a break-out session at a community-college conference. Twelve to twenty people attended. Dr. Hoiland was pleased to speak to community-college professors about a course designed to help disadvantaged students become more numerate. Dr. Hoiland projected excerpts of the written materials for the course on a screen as visual aids.

Dr. Wilder has sued Dr. Hoiland. She claims that Dr. Hoiland was not allowed to use excerpts of the written materials for the course in her presentation about the course. Dr. Wilder is wrong. Dr. Hoiland did exactly what she was required to do under the grant. She promoted the course at a professional conference. Dr. Wilder did not place any restrictions on Dr. Hoiland's use of the course materials. Dr. Hoiland had an implied license to use the written materials for the course in her presentation about the course. This is common sense. And her use – educating

conference attendees about aspects of the course – was a fair use. Summary judgment should be granted, and the Complaint should be dismissed.

## ARGUMENT

### I. Dr. Hoiland Possessed an Implied License to Use the Course Materials[1] in Conference Presentations about the NICE Project

Plaintiff's opposition – which focuses on her state of mind and what she purportedly would or would not have consented to – does not raise any genuine issues of material fact concerning the *conduct* that establishes the existence of an implied license. As Plaintiff notes, the question of whether an implied license has been created "comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." *Psihoyos v. Pearson Educ., Inc.,* 855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012). To assess whether such a meeting of the minds has occurred, courts look to whether "the totality of the parties' conduct indicates an intent to grant permission to use the copyrighted work." *Jose Luis Pelaez, Inc. v. McGraw-Hill Global Educ. Holdings LLC*, 399 F. Supp. 3d 120, 141 (S.D.N.Y. 2019); *see also Baker v. Weber*, 2021 U.S. Dist. LEXIS 188544, at *27 (S.D.N.Y. Sept. 30, 2021). When an owner's conduct "clearly manifests a consent to [the] use of copyrighted material, the owner impliedly grants a nonexclusive license." *Id.*; *see also MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1216 (11th Cir. 2021). The focus is on the licensor's "objective intent . . . as manifested by the parties' conduct." *Jose Luis Pelaez, Inc.*, 399 F. Supp. 3d at 141.

Consistent with this principle, courts routinely assess the parties' conduct and find implied licenses to exist where an owner provides copyrighted material to another party for a particular purpose, and the receiving party uses the material consistent with that purpose. *See, e.g., Effects*

---

[1] Capitalized terms that are not otherwise defined in this brief shall have the meanings ascribed to them in Dr. Hoiland's moving papers.

*Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990) (finding implied license where owner provided special effects for use in a horror movie, and film producer used the effects in the movie); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir.1996) (finding implied license where architect provided architectural designs for use in a project, and customer used the designs in the final project); *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 662 (S.D.N.Y. 2014) (finding implied license where owner provided a written proposal to a university to create a post-graduate architectural program, and the university used the proposal in connection with marketing the post-graduate program); *Fontana v. Harra,* 2013 U.S. Dist. LEXIS 35067, at *27-28 (C.D. Cal. Mar. 12, 2013) (finding implied license where owner delivered a screenplay for potential use in creating and promoting a film, and defendants proceeded to promote the film by shopping it to potential investors and producers).[2]

Applying these principles, Dr. Hoiland plainly possessed an implied license. Dr. Wilder provided the Course Materials for, among other reasons, Dr. Hoiland's use in presentations at professional conferences about the NICE Project, and Dr. Hoiland then used the Course Materials in a conference presentation about the NICE Project. More specifically, the undisputed facts establish that: (1) Dr. Wilder recruited Dr. Hoiland to serve as the co-Director of the NICE Project and the Principal Investigator at Hostos on the NICE Project; (2) the NICE Project consisted primarily of an online faculty development course; (3) Dr. Wilder provided the Course Materials,

[2] *See also Zappa v. Rykodisc, Inc.,* 819 F.Supp.2d 307, 318-20 (S.D.N.Y. 2011) (finding issue of fact as to existence of implied license to distribute previously unreleased recordings by Frank Zappa where Zappa's family provided the tracks to record label and cooperated in the album's release by drafting liner notes and designing album, and label released album); *Falcon Enterprises, Inc. v. Publishers Service, Inc.*, 438 Fed. Appx. 579 (9th Cir. 2011) (finding implied license where owner provided "adult entertainment" images for publication in magazines, and publishers then used the images in magazines); *Lulirama Ltd. v. Axcess Broad. Servs., Inc.,* 128 F.3d 872, 879-81 (5th Cir.1997) (finding implied license where writer provided advertising jingles for sale to third parties and recipient sold them to other parties); *Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 752-53 (11th Cir.1997) (finding implied license where composer provided song to baseball team with the intention that it be played at games and team played it at games).

including the Subunit 7H Materials, for use as *the* instructional materials for the NICE Project; (4) Dr. Wilder was the primary author of the NSF Proposal that led to the NICE Project's being funded; (5) the NSF Proposal specifically provided that, as co-Director of the NICE Project, Dr. Hoiland would "present at professional conferences," including national conferences outside of New York and community-college conferences; (6) after serving as co-Director and Principal Investigator on the NICE Project for more than two years, Dr. Hoiland gave a presentation about the NICE Project at a community-college conference in Florida; and (7) Dr. Hoiland used portions of the Course Materials as visual aids for her presentation.

Under these circumstances, Dr. Wilder's contention that Dr. Hoiland did not possess an implied license is frivolous. As co-Director and Principal Investigator of the NICE Project, Dr. Hoiland did not report to Dr. Wilder or otherwise require her consent or approval to carry out her responsibilities. Dr. Hoiland was required to give presentations about the NICE Project, an online faculty development course, and, for all practical purposes, the Course Materials *were* the NICE Project. Accordingly, Dr. Hoiland had discretion to use the Course Materials, including the Subunit 7H Materials, in a conference presentation (that was roughly analogous to a sparsely attended CLE session). And Dr. Hoiland's discretion to do so flowed directly from Dr. Wilder's conduct in recruiting Dr. Hoiland, providing the Course Materials for Dr. Hoiland's use, and drafting the NSF Proposal that both gave Dr. Hoiland her authority and set forth her obligations under the NSF grant. Dr. Wilder's conduct clearly manifested consent to use the Course Materials, including the Subunit 7H Materials, thereby impliedly granting a nonexclusive license.

Plaintiff claims that she did not grant an implied license because, in her view, the NSF Proposal limited Dr. Hoiland to presenting "research results" and required the Course Materials to remain under lock and key as part of an "encrypted CUNY faculty program." This is nonsense.

The NICE Project was an effective faculty development program, and one of its public-grant-justifying selling points was that the training program – the Course Materials – could be adapted or otherwise used to serve faculty members outside of CUNY. Accordingly, the grant earmarked $7,000 in travel expenses for Dr. Hoiland to present at professional conferences to promote the NICE Project as a whole. *See* Pl. Br. at 19 (acknowledging that "the grant provided funds for travel to promote NICE"). Nothing in the NSF Proposal limited in any way Dr. Hoiland's discretion as a co-Director and Principal Investigator to use the Course Materials in her presentations about the NICE Project.

Quite the opposite, the NSF Proposal – and specifically the section Plaintiff focuses on – emphasizes an intent to make the Course Materials widely available. The "Broader Impacts" section of the "Project Summary" states (with emphasis added): "NICE will also help faculty beyond CUNY. First, *the project intervention and materials, including the NICE training program* and the instructional materials that faculty develop, will be made readily available on the NICE project website." Even if Plaintiff reneged on her obligation to make the "NICE training program" – the Course Materials – available on the project website, she cannot disavow the stated *goal* of making the Course Materials readily available. Nor can she dispute that the Broader Impacts section provided for presentations to be made at conferences to "ensure that the NICE materials [referring to *both* the Course Materials and faculty instructional materials] and evaluation results are widely available to educators, policymakers, administrators, and researchers."

Plaintiff focuses on the statement in the Project Summary that the "results will be presented at conferences" to argue that only research results – not the Course Materials – could be used in conference presentations. The research concerned evaluating the effectiveness of the program (through testing, surveys, and anecdotal evidence) on topics such as whether Faculty Participants

improved their own QR skills; placed greater emphasis thereafter on QR in their course instruction; and became familiar with new strategies for teaching QR. (Hoiland Supp. Dec. ¶ 2; Dkt. No. 37-1 (D0526-D0528).) But the statement about presenting results is not framed as a limitation or restriction on use of the Course Materials; to the contrary, a specifically stated purpose of presenting the results was to ensure that the Course Materials were "widely available."

Moreover, even if (as is not the case) Dr. Hoiland had been required to present narrowly on "results," such a requirement would also imply a license to use the Course Materials in conference presentations because the results are meaningless without discussion of the NICE Project itself and its Course Materials. What good is it to know that a Faculty Participant placed a heavier emphasis on QR in her course instruction after completing the NICE Project if you aren't told what the course is and what it consists of? For that reason, conference presentations about research results – including *Dr. Wilder's* presentations – necessarily focus on numeracy and the NICE (or NICHE) Project itself followed by a briefer discussion of research results. (*See* Dkt. No. 37-1 (Wilder slide deck containing 22 slides on numeracy and the NICE/NICHE Project, followed by three slides on research results: D0526 (faculty performance on QR tests); D0527 (survey results on effectiveness); D0528 (faculty statements about the program); *see also* Hoiland Supp. Dec. ¶ 5, 6.) Accordingly, even under Plaintiff's strained and inaccurate characterization of the NSF Proposal, Dr. Hoiland possessed an implied license to use the Course Materials in conference presentations about the NICE Project.

At bottom, Plaintiff knows that Dr. Hoiland was authorized to *use* the Course Materials;[3] what she is really complaining about is the *way* Dr. Hoiland used them. She objects to Dr.

[3] Dr. Wilder's reliance on the Copyright Notice is also misplaced. The Copyright Notice expressly purports to restrict only "unauthorized" use. Dr. Hoiland's use was not unauthorized for the reasons explained *supra*. Moreover, as explained by Dr. Hoiland in her response to Dr. Wilder's Rule 56.1 Statement, Dr. Wilder's statement about what the NICHE instructional videos contain is inadmissible hearsay that is barred by the

Hoiland's (a) allegedly using the Subunit 7H Materials out of context; (b) using direct quotes from the Subunit 7H Materials; and (c) allegedly using the Subunit 7H Materials without giving her proper credit. But Dr. Hoiland has established the existence of an implied license to use the Course Materials in the CCCLA Slides. As a result, and contrary to Plaintiff's stated position, the burden shifts to Plaintiff to establish – as in an ordinary copyright infringement case – that the allegedly infringing use was outside the scope of the license. *See Graham v. James*, 144 F.3d 229, 236 (2d. Cir. 1998) (addressing an implied license: "when the contested issue is the *scope* of a license, rather than the *existence* of one, the copyright owner bears the burden of proving that the defendant's copying was unauthorized under the license. . ."); *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995) (holding that in cases where the scope of the license is at issue, "the copyright owner bears the burden of proving that the defendant's copying was unauthorized").

Plaintiff has failed to meet her burden. Plaintiff concedes that she never placed any restrictions or requirements, including requirements as to quotes or credit or "context," on Dr. Hoiland's use of the Course Materials. Plaintiff has failed to establish that Dr. Hoiland violated any academic norm or policy that would have required her to provide additional credit beyond the substantial verbal credit she provided during the Presentation. And even if Plaintiff had raised a genuine issue of fact concerning such a violation or obligation – she has not – she has failed to overcome the strong presumption that failure to meet such an obligation constitutes breach of a covenant, not a condition.

Instead, Plaintiff argues desperately that there was no meeting of the minds because the parties did not agree on all the "essential terms"; and then, in essence, she defines as essential each

---

best evidence rule. Dr. Hoiland hereby incorporates by reference that response, along with the remainder of Defendant's Response to Plaintiff's Rule 56.1 Statement. (*See* Dkt. No. 78 p. 3.)

of the restrictions that she could have imposed – but failed to impose – upon Dr. Hoiland. Plaintiff's circular argument has no merit. Perhaps the parties did not agree on all the terms that Plaintiff considered to be essential. Indeed, by her own admission, Plaintiff "did not consider that, by adding Defendant as a PI on the NSF grant, she was giving Defendant a license to [] the copyright in the work Plaintiff authored." (Pl. Br. 19.) But what she subjectively "considered" or considered "essential" is not the issue. By her *conduct*, Dr. Wilder granted an implied license to use the Course Materials, including the Subunit 7H Materials, in the CCCLA Slides.

## II. Dr. Hoiland's Use of the Subunit 7H Materials Was a Fair Use

Dr. Hoiland's opening brief established that, even in the absence of an implied license, Plaintiff's copyright infringement claim fails because Dr. Hoiland's use of the Subunit 7H Materials in an academic presentation was a fair use. Lacking a credible response, Plaintiff misconstrues the law and misstates the record. As previously established, all four factors in the fair-use inquiry weigh in favor of a finding of fair use.

First, Dr. Wilder argues that, even though Dr. Hoiland indisputably used the materials for an educational purpose, the "purpose and character" of the use does not weigh in favor of a finding of fair use because Dr. Hoiland's use was not "transformative." At bottom, Dr. Wilder claims that the use was not transformative because Dr. Hoiland "reproduced a large segment of the Copyrighted Work virtually verbatim." This argument betrays a misunderstanding of what makes a use "transformative." A use is transformative where the purpose of the use is "plainly different from the original purpose for which the copyrighted work was created." *See Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 627 F. Supp. 2d 123, 128 (S.D.N.Y. 2008); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (finding first factor favored fair use where defendant's purpose is "plainly different" from original expressive purpose). This is true even where the secondary user has made an "exact replication" of the copyrighted work. *Sarl*

*Louis,* 627 F. Supp. 2d, at 128.; *see also Harbus v. Manhattan Inst. for Policy Research, Inc.*, 2020 U.S. Dist. LEXIS 74568, at *9 (S.D.N.Y. Apr. 27, 2020) (Defendant "displayed the Photograph along with the Article to educate the public about its work . . . . The fact that [Defendant] displayed the Photograph in this new context and to serve a different purpose than Harbus' original purpose, weighs in favor of a finding of fair use.").

Here, Dr. Hoiland's purpose for using the materials at an academic conference, to educate community-college professionals about the NICE project, is "plainly different" from Dr. Wilder's original purpose, which was to work with project enrollees to "develop[] learning goals," "develop[] instruction materials," and "develop assessment materials." (Pl. Br. 4.) Moreover, Dr. Hoiland's use of the materials was undisputedly for an educational purpose, which further weighs in favor of fair use. *See Harbus,* 2020 U.S. Dist. LEXIS 74568*,* at *9-10 ("This conclusion is further bolstered by the fact that the Manhattan Institute's use of the Photograph furthers its research, scholarship and educational efforts."). Accordingly, and in light of the undisputed facts, Dr. Wilder's complaint that Dr. Hoiland used the materials "verbatim" rings hollow. *See id.* (rejecting argument that use was not transformative because it "simply reposted the Article along with the Photograph"); *see also Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014) (use can be transformative without "altering or actually adding to the original").

Second, Dr. Wilder does not seriously dispute that the second factor weighs in favor of fair use, merely downplaying the significance of the factor and noting that the materials are not a "collection of facts." As previously established, because the materials are "informational," the second factor weighs in favor of fair use.

Third, the amount and substantiality of the portion used weighs in favor of fair use. What is at issue here is a very small portion of an extensive faculty-development course. It was shown

fleetingly on a screen during a lightly attended presentation. And although Dr. Hoiland admitted that the CCCLA Slides were briefly available for download, there is no record evidence that anyone actually downloaded them or would have understood them had they done so without attending the Presentation. Even if the Subunit 7H Materials are "important," it is nevertheless true that they constitute both a small portion of the overall course and do not address the main subject of the NICE Project – infusing numeracy into educators' coursework. Furthermore, it is hardly "unreasonable" for the co-Director of the NICE Project to briefly use the slides for an educational purpose required by the grant that funded her work.

Fourth, Dr. Wilder argues that the fourth factor, the effect of Dr. Hoiland's use upon the market for and value of the Subunit 7H Materials, favors her. Dr. Wilder advances two frivolous arguments. First, Dr. Wilder argues that Dr. Hoiland's use usurped the market and value of the Course Materials because the use "benefitted her resume," accrediting her as a "sole author at an important conference." As discussed in her opening brief, listing the CCCLA Presentation on Dr. Hoiland's resume is irrelevant because what is at issue here is the CCCLA Slides – not the fact that Dr. Hoiland gave an authorized presentation on the NICE Project. Moreover, there is no evidence that the lone reference to the CCCLA Presentation on her multi-page CV had any impact on Dr. Hoiland's career. Second, Dr. Wilder speculates that Dr. Hoiland's use "could impair the market in academia for Plaintiff's work, publications and presentations." Four years have passed. Nothing has happened, and there's no reason to believe anything will. Dr. Wilder's speculation about what "could" happen is entitled to no weight.

## CONCLUSION

Dr. Hoiland respectfully requests that the Court grant her Motion for Summary Judgment; deny Dr. Wilder's Motion for Summary Judgment; and dismiss the Complaint with prejudice.

Dated: New York, New York
May 19, 2023

Respectfully submitted,

**DAVIS+GILBERT LLP**

By: *<u>/s/ Guy Cohen</u>*
Guy Cohen

1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com

*Attorneys for Defendant*
*Sarah Hoiland*